## OKIE v. SPENCER.

### July 2, 1836.

### *Demurrer.*

The holder of a promissory note, on the day the same falls due, accepts from the maker a check of a third person on a bank for the amount, payable in six days, to be in " full satisfaction for the note in case the check is duly honoured at its maturity." *Held*, that the acceptance of such check amounts to a suspension of the remedy of the holder against the maker on the note, and was therefore a giving of time to the maker, so as to discharge the indorser. Stroud, J. dissenting.

On a general demurrer to a special plea, which sets forth a certain state of facts, but does not allege a contract *in terms* for a particular object, as where the plea sets forth the facts as above, but does not allege *in terms* that they constitute a contract to give time to the maker for the payment of the note, the plea will not be held defective.

In a special plea, it is allowable to allege the facts as they really are, without in terms declaring or deducing their legal effect.

THIS was an action of *assumpsit* brought by Abraham Okie against Asa Spencer, upon a promissory note drawn by Oliver Spencer in favour of Asa Spencer, and by him indorsed. The note came to the hands of D. Williamson, and was in his hands the day it fell due. Afterwards it was indorsed by D. Williamson, and came to the hands of the plaintiff.

The defendant pleaded specially several pleas. To one of the pleas, viz., the third, the plaintiff demurred.

The plea was in the following words:

" And for a further, &c., because he says that the said promissory note was indorsed for the accommodation of the said Oliver Spencer, the drawer thereof, and that the said Asa never received any con-

[Okie v. Spencer.]

sideration whatever for the said note, nor for indorsing the same as
before mentioned.   And the said Asa further says, that at the ma-
turity of the said promissory note, &c., viz., on the 3d of May 1833,
viz., at, &c., the said Oliver Spencer, the maker, &c., and one D.
Williamson, who was then and there the holder, &c., agreed that
the said Oliver Spencer should give, and the said D. Williamson
would accept the draft, commonly called the check, of the firm of
Spencer & Marshall, which said firm was composed of the said Oliver
Spencer and one Joseph H. Marshall, upon the Farmers and
Mechanics Bank, for the full amount of the said promissory note in
the said declaration mentioned, and payable six days from the ma-
turity of the said promissory note, viz., from the 3d of May 1833,
which said term or latitude of payment was to be effected by the
device or contrivance of post-dating said check to the sixth day
thereafter, viz., the 9th day of May 1833, and the said check was
to be a full satisfaction of the said promissory note, in case the said
check was duly honoured at its maturity ; and the said Asa doth
further aver that such check was then and there given by the said
Oliver Spencer, and accepted by the said D. Williamson, in pur-
suance of the agreement aforesaid ; and the said Asa doth further
aver, that the said agreement and the said giving and accepting of
such check were without the privity, knowledge and consent of him
the said Asa, and the said Asa doth further aver, that afterwards, *to
wit* at the September term in the year 1833 of the district court,
&c., the said Abraham Okie obtained judgment on the said check,
against the said Oliver Spencer and Joseph H. Marshall, for the full
amount thereof, &c., and this, &c."

To this plea the plaintiff demurred generally, and the defendant
joined therein.


*Brashears* and *D. P. Brown*, for the plaintiff.

The taking of the check of Spencer & Marshall by the plaintiff,
was the acceptance of a mere collateral security, although payable
at a future day.   It was not a contract *in terms* to suspend the time
of payment of the note, and the court cannot rule the main question
on the demurrer that it is such a contract.   The plea being defec-
tive in this, the facts must be referred to a jury.   Such a transac-
tion does not discharge the indorser.   *Chitty on Bills* 443, 445 ;
Pring *v.* Clarkson, 8 *C. L. Rep.* 10 ; 4 *Petersd. Ab.* 442 ; 2 *Ves.*
540 ; 1 *D. & E.* 167 ; 1 *B. & P.* 652 ; 7 *Serg. & Rawle* 219 ;

[Okie v. Spencer.]

Sterling *v.* The Marietta and Susquehannah Trading Company, 11 *Serg. & Rawle* 179.

*Law* and *F. W. Hubbell,* for defendant.

This was substantially an agreement to give time to the maker. It was a suspension of the plaintiff's remedy against the maker to enforce payment.   12 *E. C. L. Rep.* 219 ; Putnam *v.* Lewis, 8 *Johns. Rep.* 389 ; Bayley *v.* Baldwin, 7 *Wend.* 289 ; Gould *v.* Robeson, 8 *East* 576 ; *Chitty on Bills* 195.   The indorser was therefore discharged ; and the taking of the check is in legal contemplation a *satisfaction* of the note as to the indorser.   *Chitty on Bills* 203, *note* 1 ; 3 *Johns. Ca.* 71 ; Toby *v.* Barnesell, 5 *Johns. Rep.* 68 ; English *v.* Darley, 2 *B. & P.* 61 ; 2 *Campb. Rep.* 179 ; Hill *v.* Reed, 16 *E. C. L. Rep.* 418 ; Rees *v.* Barrington, 2 *Ves. Jun.* 540 ; 7 *Ves. Jun.* 598 ; *Bayley* 345 ; 18 *Ves.* 20 ; 5 *D. & R.* 234 ; 3 *East* 251.

JONES, J.—It is admitted that if the holder of a promissory note give time by agreement to the drawer, so as to prevent a breach of the contract by non payment at the day, or so as to suspend the remedy after the cause of action has accrued, the indorser is discharged.

But the mere fact of giving time has not the effect.   It must be time given by contract between the maker and the holder.   But it need not be a contract *expressly* or in terms to give time.   Any valid contract which invests the maker of the note with a valid defence to an action brought against him immediately upon non payment, according to the terms of the promise to pay contained in the note, has the same effect to discharge the indorser as an agreement expressly to give time ; for such an agreement being made upon consideration with the person who has dominion over the note operates as effectually to suspend the action, as if the terms of the contract were that the action should be suspended.

It has been argued by the plaintiff's counsel, that nothing short of an agreement to give time, express or implied, will have this effect, and whether such an agreement has been made or not, it is contended, is always a question of fact for the jury.   The case of Pring *v.* Clarkson, 2 *D. & R.* 78 ; 1 *B. & C.* 14 ; 8 *C. L.* 10 ; is relied upon as an authority in support of this proposition.

There can be no doubt, that if an indorser alleges such an agree-

[Okie v. Spencer.]

ment in his defence, and the *fact of the agreement* be denied, it must be inquired of by the jury.

So if the agreement alleged by way of defence do not purport by its terms to give time, yet if the *fact of such an agreement* be denied, it must be inquired of by the jury.

But all questions touching the legal effect of the agreement, supposing the fact of it and the terms of it to be admitted or found, are questions of law.

The proposition that this plea is defective *merely* because it does not allege a contract *in terms* to allow further time to the maker of the note for the payment of it, is not tenable.

In strictness, every contract should be denominated according to its legal effect or principal intent. But in a plea, it is always allowable to allege the facts as they really are, without attempting to deduce or declare their legal effect.

Adopting the plaintiff's views, that it must be a contract to give time, if the contract is to be implied, the implication is a conclusion of law to be drawn by the court, whether the question is raised upon a demurrer or upon a trial of an issue upon the fact.

The whole question then is fairly raised upon this demurrer. The plaintiff has lost no advantage by presenting it in this form directly to the court. If he had taken issue to the jury, still the judge upon the trial would have been bound to declare to the jury the legal effect of the transaction alleged in the plea, and the jury would have been bound to follow the direction.

What then is the effect of this agreement?

David Williamson was the holder of the note, and had a right to control or dispose of it as he thought proper.

Being the owner, he agreed with Oliver Spencer, the drawer of the note, that Oliver Spencer should give him, and that he would accept the check of Spencer & Marshall on the Farmers and Mechanics Bank, payable in six days, for the amount of the note, and that this check should be full satisfaction for the note in case it was duly honoured at its maturity. This agreement was executed, so far as it respected Oliver Spencer, by the delivery of the check and the acceptance of it by Williamson.

The consideration of this agreement, as it respected Williamson, was a new and further security; as it respected Oliver Spencer, it was the delay of six days. If Williamson could have commenced suit upon this note immediately after this transaction, and during the

[Okie v. Spencer.]

six days, it would operate to defeat the whole consideration, so far as it respected Oliver Spencer, and the act of parting with his property in the check would have been rendered gratuitous contrary to the intent of the party. The condition that the check should be full satisfaction of the note in case it was duly honoured at is maturity, is evidence of an agreement to suspend the action upon the note till the maturity of the check.

The condition was for the benefit of Oliver Spencer, and there is no way in which he could get the advantage of it but by the delay to sue the note.

Virtually, Williamson agreed to look to the check for satisfaction, until its maturity. If duly paid, it would have been payment of the note at the day it fell due by relation. During this interval, the check was the principal security. The note which he retained was collateral and could be put in suit only in the event of the non payment of the check at its maturity. In principle the transaction was like that in Gould *v.* Robeson, 8 *East's Rep.* 876.

The agreement therefore invested Oliver Spencer, the maker of the note, with a legal defence to an action brought on the note, in the interval of the falling due of the note and of the check, and therefore it operated to discharge the indorser.

PETTIT, *President,* concurred.

STROUD, J.—The declaration is in *assumpsit* by the plaintiff as indorsee, against the defendant as indorser of a promissory note for 850 dollars, dated January 30th, 1833, payable ninety days after date, of which Oliver Spencer was maker and the defendant payee. Several pleas have been put in, of which the third only is material.

The substance of this plea is, that at the maturity of the note, the holder (who as the case is not altered by that circumstance may be treated as the plaintiff) took from the maker a check of Spencer & Marshall on the Farmers and Mechanics Bank, dated May 9th, 1833, for the precise amount of the note, or an agreement that if this check were paid whenever payment of it might legally be demanded, it should be a discharge of the note; that to this transaction the defendant was not privy, and that the check not having been paid, the plaintiff recovered a judgment upon it against Spencer & Marshall, in this court. The plaintiff has demurred generally to this

[Okie v. Spencer.]

plea ; so that the single inquiry is, whether the *facts* contained in the plea constitute a defence to the action.

The defendant alleges that from the mere reception by the plaintiff of the check in the manner set forth in the plea, *the law infers* an *agreement* to extend the time of payment of the note until the day inserted as the *date* of the check. The plaintiff denies, that the reception of the check without a surrender of the note, or proof of any agreement between the parties to the transaction that a suspension of the right of the plaintiff to exact payment of the note at his pleasure should be the result, gives any countenance to the conclusion of the defendant, that he had entered into a *contract* with the maker to grant the asserted delay. He contends that the conclusion of law is, (what he alleges to have been the *fact*) that the check was proffered and received at the instance of the maker as a *collateral* security, which if it had proved of any value, would have operated as a payment to that extent, and therefore a benefit to the defendant. The conflicting views of the parties, it appears to me, may be thus stated. The defendant regards the check as a *substitute* or *exchange* for the note, the plaintiff as a mere security *collateral* and *accessional* to the note ; each asserting his particular conclusion as an inference of law upon the same facts. If time were agreed to be given, both very properly concur that the plea is sustained.

On mature consideration I am constrained, both on policy and authority, to a coincidence of views with the plaintiff's counsel.

As to policy, I can perceive no sound reason for adopting a strained construction in order to absolve a party from an obligation into which he has voluntarily and designedly entered. Especially unbefitting would this seem to be, when the only probable motive for the alleged absolving act was the mere benevolence of the plaintiff, without any express agreement evidencing such intention, and in the face of all probability that either party so understood or designed it to be.

In regard to *authority*, the defence, in my opinion, is by no means sustained. Pring *v.* Clarkson, 2 *D. & R.* 78, reported also, but not so fully, 1 *B. & C.* 14 (8 *E. C. L. R.* 10), in all essential facts is the same case. It was *assumpsit* on a bill for 86 pounds 8 shillings and 7 pence, by the indorsee against the drawer ; the bill was at four months after date, accepted by J. T. Thompson, and payable to the order of Messrs Gidden & Son. At the trial it appeared that it had been drawn and accepted for value ; that Gidden & Son had indorsed it to Mr Baker, in whose hands it was when it became due

[Okie v. Spencer.]

and was dishonoured. Immediately after the dishonour, Thompson, the acceptor, sent to Gidden & Son, the payees, another bill for 126 pounds, which had *some time to run,* and which was indorsed by himself and *accepted by a third person.* With this bill Gidden & Son took up the old one, receiving at the same time the difference between the two in cash from Mr Baker, and then Gidden & Son indorsed the old bill to the plaintiff. It did not appear that Gidden & Son had in any way undertaken not to sue upon the old bill, or to give time to Thompson, the acceptor; but it was contended on behalf of the defendant, *that the mere taking of the second bill* of 126 pounds was a giving of time, and discharged the defendant, who was the drawer. The verdict, under the direction of C. J. Abbott, was for the plaintiff, which the court in bank refused to disturb. On the latter occasion the chief justice said: " the question in this case is, whether Gidden & Son, by taking the second bill, did in fact consent not to sue upon the first until the second was due. It was put to me entirely as a question of law, and I was of opinion that unless they *consented* not to sue upon the bill in question until the bill for 126 pounds became payable, the defence set up would not be available. The safest course in this and similar cases is to rely upon some *broad and plain rule.* The broad and plain rule hitherto laid down in such cases is this: if the holder of a bill of exchange *consents* to give time to the acceptor, he thereby discharges the other parties to the bill. I am of opinion on this case that the defendant is not discharged *merely by the fact* of Gidden & Son taking another security, *without any proof* of a *consent* on their part not to sue upon the first until the second bill became due. No such consent was proved, and therefore I think the case must be governed by that circumstance." And Bayley, J., concurring with the chief justice (as did the whole court), said: " there is nothing before us to show that Gidden & Son did in fact agree to give time to the acceptor, but we are *called upon to draw this inference from the mere circumstance of this bill having been given by the acceptor.* No such inference can be drawn unless it arises from the fact. The mere sending the second bill by Thompson does not restrain Gidden & Son from negotiating or *suing* upon the first, unless there is an *express* consent for that purpose. My opinion in this case is founded upon *the want of proof that* Gidden & Son *had bound themselves not to sue upon the first bill until the second was at maturity.*"

The analogy between Pring *v.* Clarkson and the case at bar is

[Okie v. Spencer.]

conceded by the defendant's counsel. But they suppose its force is abated by the observations made upon it by respectable writers of elementary treatises since published. *Theobald* is especially relied upon as lessening its authority. I understand his remarks, so far as they relate to the *true point* of the case, which is the only one which concerns the present inquiry, very differently. In my judgment he confirms, and intended to do so, the doctrine on this point, while he impugns an incidental expression of the judges, in itself strictly correct as they obviously applied it. Both the judges, whose opinion he has extracted (in this respect more fully than I have done) concurred in saying, that whether an agreement had been made to give time was a question for the jury. This was meant as a general observation, and pointed distinctly to the *intention* of the parties, which, *as a fact*, fell within the province of the jury. Lee *v.* Lee, 8 *Peters's Rep.* 45, 50. But they both agreed that the case under their consideration exhibited no fact for the jury. Bayley, J., after conceding the general proposition of law which the defendant then and here contended for, asserts the necessity of an *agreement,* and adds, " that is a question of fact *and there is nothing to support it in the case.*" What the court really decided was : 1st, that the mere circumstance of taking the *second* bill after the *first* was dishonoured, although the second bill was accepted by a different person, and was not then due, did not constitute a *fact* to be left to the jury to found the inference of an *agreement to give time* ; and 2dly, that the same bald facts did not authorize the court, as a conclusion of law, to imply such an agreement. *Theobald* finds fault with neither of these conclusions. *Theobald's Prin. & Surety* 186 ; and see page 184, where he gives what he considers the syllabus of the case. *Chitty on Bills* is supposed to dissent from Pring *v.* Clarkson. If this be so, which I do not think is the case, it is done so cautiously and obscurely as to evade my observation.

Gould *v.* Robson, 8 *East* 576, was treated by the defendant's counsel as in direct collision with Pring *v.* Clarkson, resting, as it is said, upon a similar state of facts. That the decision is different there can be no doubt, but I think the facts also differ essentially. The reporter's statement is this : " Hudson drew a bill dated the 29th of September 1806, for 766 pounds, at three months, on Iselin, which was accepted by him, and was payable to Richardson or order, who indorsed it to the defendants, and these indorsed it to the plaintiffs, who held it when it became due, and applied to the acceptor for

[Okie v. Spencer.]

payment, and agreed to receive from him half the amount, and to draw a bill on him for the remainder, payable at a future short date, which he accepted; and that until such last mentioned bill was paid they the plaintiffs should keep the original bill in their hands as a *security*. And the second bill having been dishonoured by the acceptor, the plaintiffs, the indorsees of the original bill, brought this action upon it against the defendants as indorsers. On the trial, which was before lord Ellenborough, he thought this arrangement did not amount to a giving of time, and the plaintiff obtained a verdict in conformity with his charge; but a new trial having been moved for, was, on argument, granted, lord Ellenborough then saying: "as to the taking of part payment, no person can object to it, because it is in aid of all the others who are liable upon the bill: but here the holder did something more: he took a new bill from the acceptor, *and was to keep the original bill till the other was* paid; that is, an agreement that in the meantime the original bill should not be enforced." This case differs from Pring *v.* Clarkson in this important feature, which is explicitly mentioned by the reporter, relied upon by lord Ellenborough, and noted by *Chitty* and *Theobald*, *i. e.* that the original bill was agreed to be kept as a *security* for the payment of the second bill. The new one was for *half* the amount of the old, and both being accepted by the *same person*, it would have been contrary to the reason of things to treat it as a *collateral* and *additional* security for the former bill. The old bill being for double the amount, and having other parties to it whom the holder supposed to remain bound, was accordingly kept as the *collateral* security, for such it was if *security at all*, and the case expressly states that it was to remain in the plaintiff's hands by *agreement as a security*. This being its character then, it was plain no step to enforce its payment could be taken until the new bill, the *principal* subject of the contract, should become due. A more manifest agreement to give time could hardly be imagined, and the only surprise is, that a doubt was entertained upon it by so ready and great a mind as lord Ellenborough's.

A *nisi prius* case before Chief Justice Abbot, was also cited by the defendant. It was *assumpsit* by an indorsee against the drawer of a bill, which having been dishonoured, the holder, without the knowledge of the drawer, took the promissory note of the acceptor for the amount of the bill *with interest*. This was considered a giving of time, and very properly, the addition of the interest evidencing in

[Okie v. Spencer.]

the clearest manner the *substitution* of the note for the bill.   No one seems to have had a doubt about it; the plaintiff's only reliance being an effort to take the case out of the general rule, on the ground that it was an *accommodation* bill.   Hill *v.* Read, 16 *Eng. Com. Law Rep.* 418.

It is stated in the plea, "that the said check was to be a full satisfaction of the said promissory note in case the said check was duly honoured at its maturity."   Being for the full amount of the note, this would be its precise effect as *collateral* security ; for the *principal* obligation is as completely satisfied by the payment of the *collateral* of its full value, as the *collateral* is by the payment of the *principal.*   Goods are frequently deposited as collateral security for the payment of a promissory note, and if, after having pursued the requisite steps to authorize their sale, they are sold, and the amount of the note thus received, without question the note is extinct.

There is nothing therefore in this averment which implies, much less asserts, that the check was *substituted* for the note; on the contrary, the implication is unavoidable that a substitution was *not* in the contemplation of the parties.   Nor is it a legitimate inference that an agreement that if the check should be paid at what is called its maturity, the note should be thereby discharged, is in effect an agreement to prolong the time of payment of the note till this should be ascertained ; for a similar inference might with equal propriety be drawn from the deposit of a *collateral* security which could not be made available until a future period.

But the rules of pleading require that every essential fact should be averred positively and expressly.   An argumentative plea is vicious ; much more, then, an ambiguous one.   In Ferguson *v.* Spring, 28 *Eng. Com. Law Rep.* 155, 156, the declaration stated that by an indenture between the plaintiff and defendant, defendant, in consideration of 200 pounds, granted, bargained and sold to plaintiff, for the term of *sixty* years, to be computed from the day of the date of the indenture, an annuity or clear yearly rent charge of 20 pounds, to be charged on certain messuages, &c., and payable to the plaintiff for the said term by even half yearly payments, &c.   The defendant demurred generally, and in support of the demurrer, it was argued that the contract set forth in the declaration was *usurious,* inasmuch as it was to repay a loan of 200 pounds by one hundred and twenty instalments of 10 pounds each ; yet the court gave judgment for the plaintiff on the ground that *usury* was a *fact* which the court

would not notice, unless *expressly averred* ; that it was not to be im-
plied from *an equivocal state of facts.*

In the several other pleas filed, an *agreement* to give time is dis-
tinctly averred.　A proper traverse will submit this as a fact to the
determination of a jury ; but evidence of other facts than those con-
tained in the third plea will be required to sustain it.

On the whole, as the third plea wants this essential averment, and
as, in my opinion, the law will not infer it from what is alleged, the
defendant, upon whom the burthen of disproving the *prima facie*
right of the plaintiff rests, has failed in his defence, and judgment
should be rendered against him.

Judgment for defendant.