[PHILADELPHIA, FEBRUARY 11th, 1837.]

## OKIE *against* SPENCER.

### IN ERROR.

1. Where the holder of a promissory note on the day that it became due, accepted from the maker a check drawn upon a bank, by a firm consisting of the maker and a third person, dated six days afterwards, which check was to be in full satisfaction of the note, in case it was paid at maturity; it was *held* that this amounted to a suspension of the remedy against the maker, and discharged the endorser.

2. A special plea which sets forth the facts of an agreement, may be good on demurrer; although the legal effect or result thereof is not averred.

3. Thus in *assumpsit* on a promissory note against the endorser, the defendant pleaded specially, that the plaintiff on the day the note became due, agreed to accept from the maker a check upon a bank drawn by a firm, consisting of the maker and a third person, dated six days afterwards, which check was to be in full satisfaction of the note, if paid at maturity, and that the check was accordingly accepted, &c.; it was held that the plea was good, although it did not aver that it was an agreement to give time to the maker, &c.

ON a writ of error to the District Court for the City and County of Philadelphia, it appeared that Abraham Okie brought an action on the case in that court against Asa Spencer, and declared in *assumpsit* on a promissory note, drawn by Oliver Spencer in favour of Asa Spencer, and by him endorsed.

The note came into the hands of one D. Williamson, and was in his hands on the day it fell due. It was afterwards endorsed by him and came to the hands of the plaintiff.

The defendant filed three special pleas, the third of which was as follows:

" And for a further plea, &c.; because he says that the said promissory note was endorsed for the accommodation of the said Oliver Spencer, the drawer thereof, and that the said Asa never received any consideration whatever for the said note, nor for endorsing the same as before mentioned. And the said Asa further says, that at the maturity of the said promissory note, &c., viz., on the 3rd of May, 1833, viz., at, &c., the said Oliver Spencer, the maker, &c., and one D. Williamson, who was then and there the holder, &c., agreed that the said Oliver Spencer should give, and the said D. Williamson would accept the draft, commonly called the check, of the firm of Spencer & Marshall, which said firm was composed of the said Oliver Spencer and one Joseph H. Marshall, upon the Farmers and

Mechanic's Bank, for the full amount of the said promissory note in the said declaration mentioned, and payable six days from the maturity of the said promissory note, viz., from the 3d of May, 1833, which said term or latitude of payment was to be effected by the device or contrivance of post-dating said check to the sixth day thereafter, viz., the 9th day of May, 1833, and the said check was to be a full satisfaction of the said promissory note, in case the said check was duly honoured at its maturity; and the said Asa doth further aver that such check was then and there given by the said Oliver Spencer, and accepted by the said D. Williamson, in pursuance of the agreement aforesaid; and the said Asa doth further aver, that the said agreement and the said giving and accepting of such check were without the privity, knowledge and consent of him the said Asa; and the said Asa doth further aver, that afterwards, to wit, at the September term, in the year 1833, of the District Court, &c., the said Abraham Okie obtained judgment on the said check, against the said Oliver Spencer and Joseph H. Marshall, for the full amount thereof, &c.; and this, &c."

To this plea the plaintiff demurred generally; and the defendant joined therein.

On the 2d of July, 1836, the District Court, after argument, gave judgment on the demurrer in favour of the defendant.*

The plaintiff then took a writ of error; and on the return of the record, assigned the following errors:

1. "The court below erred in deciding that if the holder of a promissory note accepts from the maker a check of a third person for the amount on a bank, payable in six days, in satisfaction for the note, in case the check is duly honoured at maturity, this amounts to a suspension of the remedy of the holder against the maker of the note, and consequently discharges the endorser, although the note had been regularly protested, and notice thereof given to the endorser.

2. The court erred in deciding that on a general demurrer to a special plea which sets forth a certain state of facts, but does not allege a contract in terms for a particular object—as where the plea sets forth the facts referred to in the first error assigned, but does not allege in terms that they constitute a contract to give time to the makers for the payment—the plea is not defective.

3. The court erred in deciding that in a special plea it is allowable to allege the facts as they really are, without alleging their legal construction or effect.

4. The court erred in deciding that the third plea pleaded in the above case in the court below, was valid notwithstanding the demurrer.

* 1 *Miles,* 299, (*Okie* v. *Spencer.*)

(Okie *v.* Spencer.)

5. The court erred in deciding that the facts set forth in the pleadings amounted to a giving of time and a suspension of the plaintiff's right to sue the maker, whereas such giving of time was not averred in the plea, and was beyond the limit of judicial construction—and which the defendant was bound to aver in his plea.

6. The court erred in deciding that the check in question was virtually a substitute or exchange for the note ; whereas it was a mere security collateral and accessorial to the note.

7. The court erred in assuming the right to decide upon the question whether time was given or not—whereas that was a question to be decided by the jury upon the evidence.

8. Because the court determined that time was given, which was a matter not averred in the defendant's plea, and which was in direct opposition to the fact that the original note as well as the check were retained by the plaintiff, and no stipulation for surrender of either was made."

Mr. *Brashears* for the plaintiff in error.

1. The acceptance of the check of a third person, under the circumstances of this case, did not discharge the defendant. Unless the remedy against the drawer was suspended during the time, the endorser could not complain. *Sterling* v. *Marietta Co.* (11 *Serg. & Rawle*, 179.) *Pring* v. *Clark*, (2 *Dowl. & Ryl.* 28 ; S. C. 8 *Eng. Com. Law Rep.* 10.) There was no agreement here to stay proceedings. The check taken was that of a third person ; mere collateral security. *Davis* v. *Gyde*, (2 *Adolph. & Ellis*, 623 ; S. C. 29 *Eng. Com. Law. Rep.* 166.) *Chitty on Bills*, 440. *Hurd* v. *Little*, (12 *Mass. Rep.* 502.) *Gould* v. *Robson*, (8 *East*, 576.)

2. The plea did not aver that there was an agreement to stay proceedings against the drawer ; which is necessary according to the books.

3. Whether time was given or not, was a question for the jury, which the court ought not to have decided. It does not follow of course that a creditor, who takes collateral security, thereby binds himself not to sue. It is a question of evidence. *Theobald on Principal and Surety*, 130.

Mr. *Law*, (with whom was Mr. *F. W. Hubbell.*)

This was the case of a note, endorsed for the accommodation of the maker. There is but one question, viz. whether the facts set forth in the plea, and admitted by the demurrer, are sufficient to discharge the defendant. In *Chitty on Bills*, 291, (8th edit.), the rule is laid down with precision, and with the proper exceptions. So by *Chitty, jun.* page 100, and *Theobald* in his Treatise on *Principal and Surety*, the effect of a transaction with the drawer, by which

the holder places himself in such a situation as not to be able to sue the former, is laid down, and the rule is recognised· in like manner by this court in *Clippinger* v. *Creps,* (2 *Watts,* 45.) In fact, there is no difficulty about the rule; the only question is, what amounts to giving time. In *Hewet* v. *Goodrick,* (2 *Carr & Payne,* 458 ; S. C. 12 *Eng. Com. Law Rep.* 219,) C. J. ABBOTT says, "giving time is where the party disables himself from suing on the bill," &c. Then could the plaintiff have sued on this note during the six days? Clearly not. There was no motive or consideration for the check, unless time was to be given. *Cruger* v. *Armstrong,* (3 *Johns. Cases,* 5.) There is a class of cases which decide that a bill or note is a satisfaction of a debt. *Tobey* v. *Barber,* (5 *Johns. Rep.* 68.) *Putnam* v. *Lewis,* (8 *Johns. Rep.* 389.) *Chitty jun. on Bills,* 100, note. *Mildert* v. *Masterman,* (2 *Campbell,* 179.) *Rees* v. *Berington,* (2 *Ves. jun.* 539.) *Bayley on Bills,* 339. *Scarborough* v. *Norris,* (1 *Bay's Rep.* 177.) *Booth* v. *Ross,* (8 *East,* 576.) *Craig* v. *Shalcross,* (10 *Serg. & Rawle,* 377.) 13 *Wendell,* 134, 509. 1 *Esp. N. P. Rep.* 5. The case of *Pring* v. *Clarkson,* cited on the other side, and which is reported also in 1 *Barnewell & Creswell,* 14, is distinguishable from this in several respects ; but it is doubted by several writers. *Chitty on Bills. Chitty jun. on Bills,* 112, (note.) *Bayley on Bills,* 5th edition, 345, (note). *Hill* v. *Reed,* (1 *Dowl. & Ryl.* 26 ; S. C. 16 *Eng. Com. Law Rep.* 418.) As to the plea; the plaintiff having demurred, has admitted all the facts and conclusions to be drawn from them.

The opinion of the Court was delivered by

KENNEDY, J.—The defendant here having endorsed the note in question, for the accommodation of the drawer, and therefore being regarded as a surety merely, it is admitted that if further time was given, when it fell due, by the holder to the drawer. for the payment thereof, the defendant is thereby discharged. And the only· question to be decided is, whether from the facts set forth by the defendant in his special plea, to which the plaintiff has demurred, the law will imply an agreement made on the third of May, the day the note became payable, by the holder of it, to give further time until the sixth of the same month, to the drawer for the payment thereof.

Had the defendant pleaded the general issue only, and under it, as he certainly might, given evidence of the facts set forth in his special plea, and the truth of them had been clearly established by the evidence or the admission of the plaintiff, without more having been shown to the jury, it would undoubtedly have been the duty of the Court, to have instructed the jury, that the facts thus established, implied an agreement, on the part of the holder of the note, for an adequate consideration received by him, to give time to

(Okie *v.* Spencer.)

the drawer for the payment of it, without having the consent of the defendant; and that the latter was thereby discharged from his liability as endorser. In the absence of all proof to the contrary, it cannot be supposed here, that the drawer, when the note had become payable, could have had any other motive for giving the check of himself and his partner, securing the payment of it at the expiration of six days, than that of procuring indulgence for that space of time upon his note from the holder of it. That such, too, must have been the understanding of them both at the time, seems to be the necessary inference from the facts stated, if our judgments are to be guided in this respect by what we know to be the common and ordinary motives which generally influence and produce such arrangements. Marshall, the partner of the drawer of the note, does not appear to have been bound for the payment of it in any way before it fell due, which tends generally to strengthen, and in truth to make the inference that the check was given to procure further time for the payment of the note irresistible. And although the check cannot be considered as having been taken in satisfaction of the note; nor as having extinguished it; yet the right of the holder to proceed against the drawer to enforce the payment of it, by suit, was thereby suspended until after the expiration of the six days. It was in effect changing, without the consent of the defendant, the terms upon which he had agreed as endorser to become liable for the payment of the note, and depriving him of the right to pay the note at maturity, if the drawer failed to do so, and then to sue him immediately for it, and therefore amounted to a release of him from his liability. He had guaranteed by his endorsement, the payment of the note on the 3d of May, 1833; and it was not competent for the holder and the drawer without his concurrence, to extend his guaranty to the 9th of that month, which would clearly have been the effect of their agreement and the giving of the check, if the defendant were still to be held liable for the payment of the note. That the holder, by accepting the check, put it out of his power to proceed on the note, by suit against the drawer, until after the six days, cannot, as it appears to me, be controverted upon any ground that would seem to be consistent with the nature of the transaction, and what must have been the intent of the parties. Had the drawer given his own check merely, for the payment of the note at the expiration of the six days, there might have been some colour for saying that he had not thereby precluded himself from bringing suit on it during that period; because it might then have been argued with great plausibility, if not correctly, that he had obtained by it no additional security, and consequently no adequate consideration to make a promise of indulgence binding: that by the check he acquired nothing except the personal responsibility of the drawer, which he had before by virtue of the note; and therefore had he even made an express promise of indulgence for the six days, it might have been alleged, that

(Okie v. Spencer.)

he would not have been bound by it for want of a sufficient consideration; but as the case is presented by the special plea and demurrer, no such argument can be advanced or pretended: for by the check, the holder of the note received the additional responsibility of Marshall, as a security for the payment of it: and it would therefore seem almost impossible to imagine any other reason for giving such additional security, than that of procuring an extension of payment for the six days. It is true, that it may seem to have been but a short indulgence; but being a suspension of the right of the holder of the note, to sue the drawer upon it during that period, it operated as effectually to discharge the defendant from his liability, as if it had been six years: for in either case, to hold the defendant to be still bound by his endorsement, would be making him liable upon terms, and in short, for the fulfilment of a contract, different from what he had agreed to. The time of payment mentioned in a note, is always a very material part of it; and if it may be enlarged without the consent of the endorser, and he notwithstanding, be held liable upon his endorsement, there is no reason why the amount may not also be enlarged: but it is obvious, that nothing of the kind can be done, without operating great injustice towards him; and therefore it is, if it be done, it shall release him from his liability. Every man, as long as he is a free agent, must be permitted to declare the terms upon which he is willing to incur an obligation; and having done so, it cannot be altered in any material point whatever, without his consent; nor yet any thing be done which may affect his rights in relation thereto.

The counsel for the plaintiff has cited in opposition to this, the case of *Pring* v. *Clarkson*, (1 *Barn. & Cres.* 14 ; S. C. 8 *Eng. Com. L.* 10,) where a bill of exchange having been dishonoured, the acceptor transmitted a new bill for a larger amount to the payee, without having had any communication with him respecting the first: the payee discounted the second bill with the holder of the first, which he received back as part of the amount, and afterwards for a valuble consideration, endorsed it to the plaintiff. It was held that the second bill was merely a collateral security, and that the receipt of it by the payee, did not amount to giving time to the acceptor of the first bill, so as to exonerate the drawer. Mr. Chief Justice ABBOTT, in pronouncing the opinion of the Court, says, " in no case has it been said, that taking a collateral security from the acceptor, shall have that effect;" that is, of discharging the other parties to the bill: and concludes by saying, " here the second bill was nothing more than a collateral security." Now it is not easy to perceive why a collateral security should not have such an effect; for surely there is nothing in the nature of it, which renders the giving or the taking of it, inconsistent with the holder's agreeing to give time to the acceptor of a bill, or the drawer of a note. On the contrary, such indulgence may be, and doubtless is in most cases, the very consid-

(Okie v. Spencer.)

eration upon which the collateral security is given and obtained: and as I have endeavoured to show, makes the case, in the absence of proof of an express agreement to give time, still stronger in favour of an implied agreement to that effect, than where there is nothing more given than a bare renewal of the promise by the acceptor of the original bill, or the drawer of the former note, to pay the amount at a future date. But Chief Justice ABBOTT was mistaken, when he said, "in no case had it been said, that taking a collateral security from the acceptor shall have that effect;" for in *Gould* v. *Robson*, (8 *East*, 576,) decided some fifteen years before, it was not only said, but the case itself turned upon the very point. There the holder of the bill of exchange, who when it fell due, after taking part payment of the acceptor, agreed to take a new acceptance from him for the remainder, payable at a future day, but in the mean time, the holder to keep the original bill in his hands as security; and it was held that it amounted to a giving of time, and a new credit to the acceptor, and therefore discharged the endorser. Besides, the authority of *Pring* and *Clarkson* has been doubted by the profession. Mr. *Chitty* in his treatise on *Bills*, 442, (8th Eng. ed.) after repeating the principle laid down in it, adds, " but it is submitted that the *mere receiving further security*, payable at a future day, would in general *imply* an engagement to wait till it becomes due." See also *Bayley on Bills*, (5th ed.) 345, note 31 : and *Chitty, Jr. on Bills*, (ed. of 1834,) 100 w. a. note 1 ; and in *Kendrick* v. *Lomax*, ( 2 C. & J. 405,) it would seem to be overruled; for it was decided there, that the holder, by taking a *renewed bill*, *impliedly* agrees to give time until it becomes due, and cannot sue in the interim, on the original bill.

But it has been further objected by the plaintiff's counsel, supposing it to be held that an agreement by the holder to give time to the drawer of the note, may be fairly implied from the facts set forth in the special plea, that still the court cannot make the implication, because this is making the facts therein stated, but evidence of such agreement, and therefore they ought either to have been referred to the jury under the general issue ; or otherwise, the defendant, instead of setting out the facts merely in his plea, which, at most, are only evidence of the agreement to give time, ought to have set out the agreement itself, *quasi* an agreement, which is the gist of the defence. This objection, perhaps, would not be without weight, if the rules of special pleading were to be strictly regarded here ; and might possibly be sustained by the force of authority. And as we are not much in the habit of special pleading, it would certainly, therefore, be well to avoid attempting to plead such matters specially, whenever, according to our practice, it may be dispensed with ; but more especially in such an action as the present, wherein it is rarely, if ever done, in England ; not even when special pleading was required, generally, in all cases, and attended to with the

(Okie *v.* Spencer.)

utmost strictness.   To sustain this objection, it has been argued that the rule, which requires things to be pleaded according to their legal effect, applies here ; and as the defendant claims that the facts set forth in his plea, amount to an agreement in law to give further time for payment, he ought, therefore, to have stated the agreement simply ;  because this is the aspect in which he wishes the matter to be considered by the court, and, therefore, he ought to have so presented it, and not in the indirect and circuitous mode of allegation which he has adopted.   Under this view of the rule, it was laid down in *Stroud* v. *Lady Gerrard*, (1 *Salk.* 8,) which was debt on a bail-bond, that if the defendant has put in special bail, he cannot plead in terms, that he has put in such bail, but must plead *comperuit ad diem;* because, as is there said, he must plead according to the operation things have in law.   This rule, however, as I apprehend, has not been regarded in this, and some of the other states, with the same strictness as in England.  In *Herrick* v. *Bennett*, (8 *Johns.* 374,) it was held, upon demurrer to the plaintiff's declaration on a promissory note, to be sufficient that it was set out according to its terms.   The note, as stated in the declaration, was without any time being mentioned therein for payment, and the court say, "it is to be presumed that the plaintiff has stated the note in his declaration, *according to the terms* of it, and that *is sufficient.   The conclusion of law is,* that when no time is specified in a note, it is payable immediately."   It appeared the note was not declared on according to its legal effect; but the court having the terms of the note, or, in other words, the facts therein contained, presented by the plaintiff's declaration, and admitted by the defendant's demurrer to be true, conceived the only matter then in issue between the parties was thus reduced to a mere question of law, which they, according to the maxim, *ad questionem legis non respondent juratores sed judices,* were bound to answer, and accordingly rendered a judgment in favour of the plaintiff.

This decision of the Supreme Court of New York was followed by this court in a case decided by it at Pittsburgh, some *eight* or ten years ago, which I believe has not been reported.   It was preferred to the decision given in the case of *Bacon* v. *Page*, (1 *Conn. Rep.* 404,) which was cited and shown on the agreement; wherein the same point arose, and received a directly contrary decision, by the Supreme Court of Connecticut.   This latter court say that the plaintiff should declare on a contract, according to its *legal effect,* and not on the *evidence* of the contract: that it did not appear from the declaration that the note had become payable ; and accordingly reversed the judgment which had been rendered against the defendant below, by the default.

In the case before us, from the facts set forth in the special plea, the conclusion of law, that the holder of the note, when it fell due, for an adequate consideration, agreed to give time to the drawer to

(Okte v. Spencer.)

pay it, is quite as strong and as certain, as that the law, when a note is given for the payment of money, without any time being specified therein for that purpose, makes it payable, by implication, immediately. The plaintiff was bound to know the conclusion which the law would draw from the facts stated in the plea, if true; and if not true, he knew them not to be so, and therefore ought, and no doubt would, have taken issue upon them, and put the defendant on proving them before a jury. Seeing, however, that he has only denied their sufficiency in law to defeat his claim against the defendant, we must take it that they are true, as stated in the plea. No question of fact, therefore, remains to require the intervention of a jury; the matter in issue is reduced to a mere question of law, which the court is bound to decide. Considering, then, the facts as being sufficient to raise, by implication of law, a binding promise on the part of the holder of the note, at the time it became due, to give the drawer further time for the payment of it, which discharged the defendant from his liability as endorser, we affirm the judgment.

Judgment affirmed.