## Sawyers *against* Hicks.

The surety of an administrator for the faithful performance of his duties in making sale of the real estate of his intestate for the payment of debts, is not discharged from liability by a return to the first order of the court, "unsold for want of bidders;" but he continues to be liable for the faithful appropriation of the proceeds of sale, by virtue of any subsequent order of the court and continuance of the same proceedings; and this, although upon the granting of a subsequent order, the court may alter the terms of sale.

If after the sale of real estate, by order of the orphans' court, the guardian of one of the heirs take a judgment from the administrator who made the sale, for the share of his ward, and give a stay of execution for one year, the surety of the administrator in the recognizance for the faithful performance of his duties, and payment of the proceeds of sale, is thereby released from liability.

ERROR to the common pleas of *Dauphin* county.

C. Blythe, president of the orphans' court, for the use of Samuel Hicks and Ann his wife, a daughter of Joseph Sturgeon, against John Sawyers. Debt on recognizance in the orphans' court.

James Dixon and William Cathcart, administrators of Joseph Sturgeon, applied to the orphans' court of Dauphin county, to grant them an order to sell the land of Joseph Sturgeon, for payment of his debts. The court made an order that they should sell the land, and John Sawyers, as their surety joined them in a recognizance, conditioned that they would duly execute the order, and rightly distribute the proceeds of sale. On this recognizance suit is brought. The first order to sell was awarded on the 5th day of March 1816, returnable last Monday of April 1816; on that day the administrators returned that they had offered the land for sale, but that it remained unsold for want of bidders. Whereupon the court having held the report under advisement, awarded another order on the 17th of September 1816, which was also returned unsold; and a third order was awarded on the 2d of December 1816, which was returned on the 3d of February 1817, that they had sold the land for 3000 dollars, which was confirmed by the court. On the 7th of June 1833, the final administration account of William Cathcart, administrator of Joseph Sturgeon, deceased, was confirmed by the orphans' court, by which a balance was ascertained to be in his hands for distribution among the widow and heirs of intestate of 2209 dollars 33 cents. Intestate left a widow and two children. The wife of Samuel Hicks, is one of his children; in her right, Hicks claimed one-third of the balance in Cathcart's hands.

Defendant rests his defence on two points. The first is, that his responsibility as surety, ceased upon the first order of sale being returned unsold; but if not that, he cannot be held responsible for the proceedings of the administrators on the third order of sale,

inasmuch as the terms of sale were materially changed in it from the first order.

The second ground of defence is, that William Allen, guardian of plaintiff's wife, took a judgment bond from Cathcart, for the money claimed in this suit, and entered it in this court, giving Cathcart one year's stay of execution. This judgment was entered in May 1821, and William Allen states in his testimony, that it was taken for the money due by Cathcart, as administrator of Joseph Sturgeon, to the minor children of Sturgeon, for whom Allen was guardian.

The court below, ruled both these positions against the defendant. Verdict and judgment for the plaintiff for 330 dollars.

Errors assigned.

1. The court erred in admitting the evidence set forth in the first bill of exceptions.

2. There is error in the charge of the court, in stating, that John Sawyers, the surety, was bound notwithstanding the renewal or continuance of the order, and the change in the terms of sale contained in the third order of sale.

3. The court erred, in their charge to the jury, on the second ground of defence taken by defendant, viz: that the guardian of plaintiff, having taken a judgment against Cathcart, and given time to him for payment, under the circumstances in evidence, did not discharge the surety; and in the following passage—"had Allen stipulated that he would not sue on this recognizance, for a year after the money it secured, was .due, Sawyers would have been discharged. But his taking a bond and judgment did not prevent him, or Sawyers in his name, from proceeding on this recognizance, and, therefore, does not discharge Sawyers from his liability on the recognizance. The law, in the opinion of the court, is against defendant."

*Alricks* and *M'Cormick*, for plaintiff in error, cited 2 *Whart.* 253; 2 *Watts* 45; 3 *Stark.* 1389.

*M'Clure*, for defendant in error, cited 1 *Law. Lib.* 106.

The opinion of the Court was delivered by

ROGERS, J.—The condition of the recognizance, on which the suit is brought, is for the faithful execution of the order of sale, and truly to account for, and pay over the proceeds of the sale, in such manner as the court shall decree. It is objected, that there was an *alias* and *pluries* order, and that the recognizance was taken under the first order, and that the terms of sale were varied in the last, on which the property was sold, without notice to the bail. The first order was awarded on the 5th day of March 1816, returnable last Monday of April 1816, which was returned "unsold for want of buyers." On the 17th of September 1816, the court awarded

an *alias*, which was also returned "unsold." On the 2d of December 1816, they awarded a *pluries*, which, on the 3d of February 1817, the administrators returned, that they had sold the land for 3000 dollars, which was confirmed. Although it is called an *alias* and *pluries* order, yet it is, in effect, nothing more than a continuance of the first order; when the administrator has been unable to effect a sale within the time prescribed, it has been a matter of course to continue the order on the application of the administrator; nor has it been the practice, to exact new security for the faithful performance of the trust, on the ground that the engagement of the surety has been held to abide the final decree of the court. It is also within the discretion of the court to vary the terms of sale, so as to enable the administrator to sell, by prolonging the time of payment by the purchaser. When, therefore, the recognizance is entered into, it is with a full knowledge of the power of the court, to continue the order of sale, and alter the terms of payment. This practice is more convenient, than to enter new security at each successive renewal. If a person has improvidently entered security for another, the court perhaps, would discharge him from his engagement, if timely application were made, by directing new security to be given. It is necessary to settle the practice, but which ever way it is settled will be of but little consequence, as the surety may protect himself by ordinary care.

But it is contended, that the defendant is discharged, because the guardian of the plaintiff's wife took a judgment from Cathcart, the administrator, for the money claimed in this suit, with stay of execution for one year. We are of opinion, that this exonerates the bail, and that in this respect, the court were in error. In Chew *v.* Spencer, 2 *Whart.* 257, this point was decided; where the holder of a promissory note, on the day it became due, accepted from the maker, a check drawn upon a bank, by a firm, consisting of the maker and a third person, dated six days afterwards, which check was to be in full satisfaction of the note, in case it was paid at maturity; it was held, that this amounted to a suspension of the remedy against the maker, and discharged the indorser. It is not necessary, as is shown in that case, that the one, should be in satisfaction of the other, to discharge the bail; it is sufficient, that the remedy is suspended. Here, taking the judgment with the stay of execution, amounted to an agreement to suspend proceedings upon the recognizance against the administrator, until the expiration of the stay of execution, and for this reason, the bail is released.

Judgment reversed.