By the Court, Cowen, J.
This is an action against the defendants as endorsers for the accommodation of one Bostwick. The endorsement was on a promissory note of $5000, dated April 10th, 1835, made by Bostwick, and payable six months after date to the defendant’s order, at the Bank of Buffalo. The note was left by Bostwick with Myers & Clarke as collateral security for such goods as they should sell to, and such acceptances as they should make for him from time to time, they being informed that the note was endorsed for Bostwick’s accommodation. Goods were sold accordingly, and acceptances made till the 1st of May, 1836, when, on settlement, Bostwick was found in arrear $3045. For this sum he gave his three several notes, payable at two, three, and four months. Among the items settled was an acceptance of $590,43, dated August 28th, *464 1835, which was included by mistake, Bostwick having before given his note for that sum, payable one day before the acceptance'matured. In the meantime, and on the 1st of February, 1836, one Gedney joined the firm of Clarke & Myers; and the new firm, by arrangement among themselves, continued advances on the faith of the note of $5000. Their advances were of goods on a credit of six, seven, and eight months. About the time the note was endorsed, Bostwick confessed a judgment in favor of the defendants, to secure them. Owing to previous incumbrances, however, nothing was actually secured by it. The note having been transferred to Myers, he brought this suit in his own name.
The judge charged the jury that, as the holders of the note had given time to Bostwick, the endorsers were discharged; and he did not except the draft for $590,43.
We think the charge was correct. The stating of the account on the first of May, and talcing the notes of Bostwick payable at a future day, suspended the claim upon the original consideration till the notes became due. Being negotiable, they might be used more beneficially than the account. Beside, they operated to liquidate the plaintiff’s claim. These advantages constituted a sufficient consideration for the suspension. The notes would not per se operate as a satisfaction; but on maturing in the hands of the payees, though not before, they might fall back on the original consideration. There can be no doubt of the intention to extend the time of payment. (Chit. on Bills, 442, Am. ed. of 1839.) The doctrine stated is summed up, and the cases cited in Chit. on Contr. 766, Am. ed. of 1842. See also King v. Baldwin, (2 John. Ch. Rep. 561.) Okie v. Spencer, (2 Whart. 259; 1 Miles, 306, 7, 8, S. C.;) Kendrick v. Lomax, (2 Crompt. & Jerv. 405.)
If time on the note in suit was effectually given by the enlarged credit upon the demand for which it was held as security, then it is not denied that the defendants are discharged. (See Wood v. Jeff. Co. Bank, 9 Cowen, 206.) It is urged that the giving of time was only as to the debt, and did not operate as a suspension of the right to sue upon the note of $5000, that *465 being only a collateral security. But we are of opinion that this must follow any arrangement by which the debt it secured was in any way affected. As payment would discharge it, so suspension would postpone the remedy by suit. The endorsement having been made for the accommodation of Bostwick, not only derived its vitality from the principal debt, but was equally dependant upon it as to the time fixed for payment. The goods sold by the new firm can .scarcely be considered as covered by the note at all. It had already fallen due; and besides, these goods were sold on a credit. It is entirely settled, that giving time to the principal discharges the surety.
The theory on which sureties are thus discharged, is said, however, to be the suspension of their remedy over, or their right to demand that the creditor should sue the principal; and it is supposed that both reasons were inapplicable to this case, inasmuch as the sureties could have proceeded at any time on the judgment which they held as security. The right thus to proceed, however, is not perceived. We must presume the judgment was .confessed with the proper provision that it should not be resorted to unless the sureties were compelled to make payment, or at least holden to their liability as sureties. The creditor having done an act which would, in an ordinary case, discharge them, it is implied in the very purpose for which such a judgment is given, that it should not be enforced. It is in . substance like an express agreement to indemnify a surety. When the conduct of the creditor has been such as to take from the surety the character on which the indemnity is founded, this of course enures as a discharge of any counter security which he may hold in that character. Such security is no more, in legal effect, than what the law implies, viz. that the principal shall refund what his surety may be obliged to pay. The case is not parallel with that of an endorser, who claims a discharge for want of presentment or notice. An indemnity, by preventing all injury arising from the omission, is considered as equivalent to notice. The reason for requiring presentment and notice has ceased by his own act. No such ground can be alleged in this case. Beside, he would not be holden without an *466 effectual indemnity. Here the judgment proved utterly unavailable.
As to the acceptance of $590,43, it was sworn by Clarke that it slipped into the account stated, and was thus apparently included in the notes which gave farther time, by mistake. But the mistake was never corrected. All the three notes stood, and were acted upon just as if it had never occurred. It does not appear but that the holders óf the note in question discovered the mistake immediately. At any rate, the sureties were never set right; and the unexplained silence of the holders must be taken as an acquiescence in, and confirmation of the settlement throughout. The case is fully within the reason of the rule which declares the surety to be discharged by delay.
New trial denied.