## Shaw & Leigh *versus* The First Associated Reformed Presbyterian Church.

*Principal and Surety.— Contract to give Time not implied from receipt of Note for Claim.— What Acts of Creditor will relieve Surety.*

1. Where a creditor takes from his debtor a note payable at a future day on account of his claim, the law raises no implication that he agrees to give time until the maturity of the note, for the payment of the original debt: but the agreement must be proved as a fact, dependent upon the understanding of the parties at the time when the security was given.

2. Therefore where material-men took from a contractor his notes, receipting for them as "in full for brick delivered to a church" against which they filed their lien and proceeded upon it before the notes became due, and it was found by the jury that the notes were not received in satisfaction of the debt, it was held that a binding agreement that the plaintiffs were not to sue for the original debt until the notes matured could not be implied from the transaction.

ERROR to the District Court of *Philadelphia*.

This was a *sci. fa.* brought August 20th 1859, upon a lien filed by the plaintiffs against the First Associated Reformed Presbyterian Church, owner or reputed owner, and Alexander Nicholson, contractor, for the sum of $2346.50, the last item furnished being on the 14th of January 1857. The claim was filed May 26th 1857. A *scire facias* had been issued in this case November 18th 1857, upon which, after issue joined, a nonsuit was entered. The plaintiffs, without filing any other claim, then issued the writ in this case. On the trial, after the plaintiffs' claim had been regularly proven, defendants offered in evidence a receipt, whereof the following is a copy :—

[Shaw & Leigh v. The First Associated Reformed Presbyterian Church.]

" Received, March 4th 1857, of Alexander Nicholson, notes as follows :—

        " One for $615.50, at sixty days.
        " One for $615.50, at ninety days.
        " One for $615.50, at four months.

" Amounting to $1846.50, in full for bricks delivered to church in Race street, east of Seventeenth, north side.

    " $1846.50.               SHAW & LEIGH."

They further gave in evidence the record of judgment of non-suit, entered May 19th 1857, in an action of *scire facias* upon the same mechanic's claim, and also as in their possession the notes set forth in said receipt. They also offered in evidence the charter of the church, so far as the same defined the duties of the trustees, as follows :—

" The trustees shall meet at the call of the president of his own accord, or at the desire of any two members; the notification to be either from the desk after public worship, or by written notice left at the dwelling-house of each member, or by adjournment. Their power shall extend only to the temporalities of the church, in rating and letting the pews, collecting the pew-rents and other dues of the church, receiving the public collections, keeping the place of public worship and burial-ground in repair, providing for and paying the debts of the church, fixing and paying the salary of the minister, clerk, and sexton, and, when the funds will admit, to the relieving the poor of the church and the maintaining of a school; but they shall have no power to dispose of the money or property of the church or congregation for any purpose exceeding two hundred dollars in one year, excepting for the salaries above mentioned, without the approbation of a majority of the lawful voters."

The plaintiffs then offered to prove by George H. Tryday, that he was a creditor of defendants; that a meeting of the trustees and creditors was held in August 1857, on the invitation of the trustees, after the building was finished, in order to ascertain the amount of claims against the building; that plaintiffs' claim was presented, and no exception made to the claim; that trustees said they owed Nicholson $6000 on his contract, $2000 in cash and $4000 in their notes at four months, and that they were prepared to settle, provided creditors would sign release of liens. The defendants objected to this, and the court sustained the objection. To which ruling the plaintiffs excepted.

Plaintiffs then offered to prove, by James H. Randall, that after the claim was in his hands as attorney for the plaintiffs, and having notified defendants thereof, he had interviews with two of the trustees, and correspondence with them separately, in April or May 1857, and that they desired him to postpone filing

[Shaw & Leigh *v.* The First Associated Reformed Presbyterian Church.]

a lien, so as to give time for payment, which he did. No time of postponement was specified. To this the defendants objected, and the objection was sustained by the judge, to which decision plaintiffs excepted.

Plaintiffs then offered to prove by Ephraim Shaw, that he heard a conversation between Braden, one of the trustees, in May 1857, and Mr. Leigh, in which Mr. Braden requested that no lien should be filed; that they would settle the claim as soon as they could raise the money for that purpose; that they owed Mr. Nicholson $1000 on contract price; that in July 1857, Nicholson and Braden called on plaintiffs, and asked them to send paving brick, and finish up the church; that plaintiffs refused, and said they did not want to increase their bill; that Braden urged it, saying he would have to go elsewhere to buy. To this defendants also objected, and the court sustained the objection; whereupon plaintiffs excepted.

Plaintiffs then offered in evidence the minute-book of the congregation and building committee, to show the appointment of a building committee, and that Mr. Getz was secretary of it. To which defendants objected, and the court sustained the objection; whereupon plaintiffs excepted.

They then called as a witness James H. Randall, Esq., who testified that the notes referred to had been handed to him for collection by the plaintiffs. That no suit had been brought upon them. That the same were in his hands at the time of filing the lien, but that they had not been during all the time since they were given to the plaintiffs.

The defendants submitted the following points, requesting the court to charge,

1. That, as the church stands in the light of a surety for the contractor, and as time was given by the receipt for the payment of the debt, the church was released, and the verdict should be for the defendants.

2. The receipt is for certain notes "in full" of the bill. This is evidence to rebut any presumption that they were not received as payment; and there being no evidence to contradict this, the verdict should be for the defendants.

3. The receipt is not the simple receipt of a promissory note for a precedent debt, but it is accompanied by language tending to show that they were taken in satisfaction and discharge; and if that was the intention of the parties, the lien was extinguished.

4. The lien is insufficient to support present action, because it does not allege that any credit was given to the building, or that the bricks were furnished upon the credit thereof; also, because the bill attached shows that they were furnished by one John W. Leigh, in whose name the claim is not filed.

[Shaw & Leigh *v.* The First Associated Reformed Presbyterian Church.]

5. The present *scire facias* is issued upon the same claim in which a *scire facias* was previously issued, and on which, after issue joined, a nonsuit entered, May 19th 1859, and afterwards by the court in banc; no second claim having been filed, the plaintiffs, in the present form of action, cannot recover.

6. That the receipt, on its face, is evidence for the jury that the right of lien was abandoned; and the only evidence that can be given to support the lien in the present action, must be evidence explanatory of the receipt in the circumstances under which it is given.

The learned judge charged the jury as follows:—

"Upon the first point, I charge against the defendants, but reserve the point for the court in banc.

"Upon the fifth point, I refuse to charge as requested, and charge against the defendants.

"Whether the notes were received as payment, we leave as a question of fact to the jury."

The jury found a verdict for plaintiffs for $2183.48, but the court in banc subsequently entered judgment on the point reserved in favour of the defendants, *non obstante veredicto.*

The plaintiffs thereupon sued out this writ, and assigned as cause for reversing the judgment of the court below, the following matters, viz. :—

1. Because the court below entered judgment for the defendants on the point reserved, *non obstante veredicto.*

2. Because the court below erred in deciding that, as the church stood in the light of a surety for the contractor, and time was given by the receipt for the payment of the debt, the church was released, and that judgment must be entered for the defendant, which was the point reserved.

3. Because the learned judge erred in rejecting the testimony of George H. Tryday, as per first bill of exceptions.

4. Because the learned judge rejected the offer on part of plaintiffs to prove, by James H. Randall, the facts mentioned in the second bill of exceptions.

5. Because the learned judge rejected an offer on part of plaintiffs to prove, by Ephraim Shaw, the facts set forth in the third bill of exceptions.

*Charles E. Lex*, for plaintiffs.—Several cases decided in Pennsylvania have established the principle that a note taken for the payment of a debt will only operate as an extinguishment of it, if so intended by the parties. The question of fact is then to be submitted to the jury: Johns *v.* Bolton, 2 Jones 339 ; Kingsley *v.* Buchanan, 5 Watts 118 ; Jones *v.* Shawhan, 4 W. & S. 257 ; Seltzer *v.* Coleman, 8 Casey 493. See, also, Chitty on

[Shaw & Leigh *v.* The First Associated Reformed Presbyterian Church.]

Bills, 10th ed., 1859, p. 119; Smith's Mercantile Law, 6th ed., 1859, p. 542.

The present case was ruled by the court below, upon the principle set forth in Hill *v.* Witmer, decided by the District Court, and reported in 2 Philadelphia Reports 72, the syllabus of which is, " A material-man took the note of a contractor for the materials furnished a building, and extended the time of payment. The owner, having no notice of the claim before the note fell due, paid the contractor in full. Held, that the owner, or rather the building itself, stands in the light of surety for the contractor, and that the *agreement to give time* discharged the building from the lien.

If the contractor and owner do really stand in the relation of principal and surety, we are bound to apply to it the familiar rule, that time given by a binding agreement to the principal, without the consent of the surety, discharges the latter.

It is submitted, however, that the building for which work has been done, or materials furnished under the mechanic's lien, does not stand in the position of a surety: so that, even giving time to the contractor, does not discharge the building. The lien is absolute for six months after the work done or materials furnished; it is collateral security during that time, and the security is only lost upon failure to file the lien. The owner can protect himself by refusing payment to the contractor until a release is furnished. In this case the notes were so drawn as to fall due within the period of six months from the date of the last materials furnished. The last item was furnished on the 14th of January 1857, whilst the last note became due July 7th 1857, within the six months. The owner is supposed to know the progress of the building, and is not obliged to make any payment until he has ascertained that the mechanics and material-men have been paid. But a release of the principal does not necessarily release the surety. Besides, no stipulation was made here for giving time to the contractor, which distinguishes it from the case of Hill *v.* Witmer. The same doctrine is held in Weakley *v.* Bell, 9 Watts 283.

It is further submitted that there was error in the refusal of testimony to show that these notes had been taken with the knowledge and consent of the trustees.

A corporation may contract by an agent as well as a private individual: Pittsburgh and Connellsville Railroad Company *v.* Clarke, 5 Casey 146.

These trustees, it is submitted, were the agents of the corporation. The offers of evidence made would, if admitted by the court, have shown the entire acquiescence of the trustees and building committee in the arrangement made between the plaintiffs and the contractor.

[Shaw & Leigh v. The First Associated Reformed Presbyterian Church.]

*Benjamin Johnson* and *William A. Porter,* for the defendants. —The point upon which this case was determined has never been directly passed upon by the court of last resort, but was determined by the court below in 1856, in the case of Hill v. Witmer, which is reported in 2 Philadelphia Reports, p. 72.

The points decided appear to be, first, that where the owner and contractor are different parties, the building or the owner stands toward the material-man in the light of a surety for the contractor; and second, in the absence of any reservation, that where time is given by the creditor to the principal (the contractor) by a binding agreement, without the consent of the surety (the owner), that the latter is discharged.

These principles are, as was held by the court below, " Obviously both just and reasonable, and seem required by analogy." The materials for which the claim was filed, were ordered by the contractor alone—he is the sole party charged in the plaintiffs' books. The plaintiffs were unknown to the owners, who were a corporation, nor was there any obligation given, or agreement entered into, which made them liable for the debt. The contractor entered into the contract on September 9th 1856, the last materials were furnished 14th January 1857. It is not pretended that the owners ever heard of the plaintiffs, but it is in evidence that negotiations and settlements on account were entered into between the plaintiffs and the contractor, while the materials were being furnished. With such facts as these established, it is submitted that the contractor must be regarded as the original debtor, or principal in the transaction. A debt due to him by the claimant may be the subject of a set-off: Gabell v. Parry, 1 Harris 181.

There is nothing in the Mechanics' Lien Act which tends to alter the terms of such a contract, or diminish or increase the liability of the contractor. The object was not to create a personal liability in third parties to the contract, or to give a right of action to the material-man, which he himself never anticipated or provided for. The lien given by the act is simply a collateral security for the payment of the debt. The material-man obtains a hold upon the building, or the materials themselves, if he desires it, but there is no provision in the act which obliges him to resort to that fund or to the proceeding *in rem*, or prevents the parties settling the debt by any payment, or accord and satisfaction which may be most agreeable. The settlement, in the present case, was by three negotiable promissory notes.

If the owner stands in the light of a surety for the contractor, the next question is whether all, or if not all, which of those equitable principles which are universally enforced between principal and surety, shall be applied to such a relationship. As sureties of the contractor, they had a right to pay the debt

[Shaw & Leigh v. The First Associated Reformed Presbyterian Church.]

incurred by him, and claim credit for it on the contract price, or sue him at once for reimbursement if paid. The plaintiffs, however, deprive the surety of this remedy, by entering into *a binding agreement* with the contractor on *4th March* 1857, *to give him time*, by accepting these promissory notes, the first of which would not fall due for sixty days, to wit, *6th May* 1857. During this time all right of action was suspended, and both the contractor and the plaintiffs could claim the benefit of it. The owner could not pay the debt after the contractor had obtained the extension, and demand reimbursement, for the debt was not then payable. Even after the first note became due, the contractor was under no obligation to pay without a surrendering up of the remaining notes, which probably had been negotiated. They bound themselves, at least, to give time to their principal, without notice to their sureties, and that was sufficient grounds for the entry of judgment by the court below on the point reserved.

Armed with such a receipt as was obtained from the plaintiffs, the contractor had an absolute right to demand immediate payment. It contained upon its face that which was sufficient evidence to show satisfaction of the debt: Jones v. Shawhan, 4 W. & S. 257; Seltzer v. Coleman, 8 Casey 493. It reads, "in full for bricks delivered to church in Race Street, east of Seventeenth, north side," and was signed "Shaw & Leigh." If such receipts are evidence from which a jury may find satisfaction of a debt, the defendants in error were justified in acting upon it. It was absolute and unqualified, without reservation, and shows upon its face a binding agreement to extend the time of payment, the length of which is immaterial. This is sufficient to release the defendants: Pipkin v. Bond, 5 Iredell's Eq. 91; Bangs v. Strong, 7 Hill 250; Fellows v. Prentiss, 3 Denio 512; Okie v. Spencer, 2 Whart. 253; Philpot v. Bryant, 4 Bingham 717; Leavitt v. Savage, 16 Maine 72; Harnsberger v. Geiger, 2 Grattan 144; Stedman v. Gooch, 1 Espinasse 4; Walton v. Mascall, 13 M. & W. 452; Baker v. Walker, 14 Id. 465; Price v. Price, 16 Id. 232; Mercer v. Lancaster, 5 Barr 160; Myers v. Willis, 5 Hill 463; 3 Metcalf 255; 10 Johnson 587; 10 N. Hampshire 318; 8 Peters 108; 2 Watts 45; 2 McLean 451; Clippinger v. Creps, 2 Watts 45; Young v. Littlejohn, 2 Harris 526; Comegys v. Booth, 3 Stewart 14; Boultbee v. Stubbs, 18 Vesey 20; Rees v. Berrington, 2 Id. 540; Huffman v. Hurlbut, 13 Wend. 377; Miller v. McConn, 7 Paige 452; Davis v. People, 1 Illinois 409; Rathburn v. Warren, 10 Johns. 587.

The remaining points of the plaintiffs in error relate to the rejections of evidence. It is not correct to say that the evidence offered was to show that the notes were taken with the knowledge and consent of the trustees. The object, as stated at the trial,

[Shaw & Leigh v. The First Associated Reformed Presbyterian Church.]

was to show subsequent acknowledgments of the debt by different members of the corporation. The jury having found for the plaintiffs, the rejection of this evidence was immaterial.

The extension of time on 4th March was reduced to writing, and was an arrangement between the plaintiffs and the contractor alone. The evidence offered had no reference to this date, or to the transaction, and the real question is, whether it was evidence to vary or alter the terms of this written contract. The offer consisted of conversations between the witnesses and divers members of the corporation, in the absence of the contractor, who was a party to the written agreement, and related to a period after the extension had expired.

The charter of the defendants in error showed that they were a religious corporation, acting in one body as a church or congregation, with trustees for specified purposes, and a building committee.

The conversations offered were with one or more of the trustees, not acting, however, in any official capacity. Their power, as is shown by plaintiff, was limited,—in the matter of expenditures, was confined to $200 a year, and was intended to apply only after the building was completed. They had nothing to do with the erection of the new building, which was confided to the building committee.

The first offer referred to a meeting in August 1857, of the trustees and creditors. The object was merely to "ascertain the amount of claims against the building." They had not any delegated power from the church to acknowledge debts, or enter into any contracts, nor had their meeting the slightest reference to the proceedings between the contractor and the plaintiffs in March 1857, five months previous. It is not easy to perceive how this meeting could vary or affect the terms of the written agreement entered into at another time by different parties. That plaintiffs' lien was brought to their notice was immaterial. They had no powers to bind the corporation, and neither assented nor excepted to it. The declarations of these individuals as to how they proposed to settle with the contractor, showed no assent by the corporation to the extension of time granted.

The second offer referred to an interview of the plaintiff's counsel with two of the trustees separately, who desired him to postpone filing any lien so as to give time for payment. This was after the extension, and the payment referred to was a payment of the notes given by the contractor. It is sufficient to observe that no time was agreed on—that these trustees were acting singly, had no authority to bind the corporation—that the contractor was not present, and that they in no way made reference to the extension that had been given. Such evidence was not sufficient to affect the written agreement.

[Shaw & Leigh *v.* The First Associated Reformed Presbyterian Church.]

The last offer was of an alleged interview with a single trustee, Mr. Braden, and is so apparently incompetent to bind or affect a corporation with reference to past transactions, that but little importance need be given to it.

The corporation differed in its manner of contracting, but little, if any, from other corporations; and no evidence was given to show that its powers were ever delegated to any number of its members less than the whole. If the trustees referred to, one or more, had any authority to represent the corporation, or if its seal had been intrusted to them, it could have been shown. In the absence of any such evidence, it would furnish a bad precedent to hold that any corporation is to be bound by careless and random admissions of its members, either singly or at informal meetings, and especially when it appears that the body corporate itself is in full life and vigour.

The opinion of the court was delivered, May 6th 1861, by

STRONG, J.—That the notes taken from the contractor by the plaintiffs were not taken in satisfaction of the debt due from him, and for which the claim was filed, is established by the verdict of the jury. But it was thought, in the court below, that the receipt given for the notes amounted to an agreement to give time, and that therefore the church building, standing in the position of a surety for the contractor, was discharged from the lien. The receipt, however, contains no express engagement not to sue Nicholson upon the original account until the notes taken as a cumulative security should fall due. Was such a binding agreement implied in the transaction? Does the receipt from a debtor of a promissory note, payable at a subsequent day, not in satisfaction of the debt, but to be satisfaction when paid, raise an implication that the creditor engages not to sue for the original debt until the note matures? Upon this question the authorities differ. In Okie *v.* Spencer, 2 Whart. 253, where the holder of a promissory note on the day that it became due, accepted from the maker a check drawn upon a bank by a firm, consisting of the maker and a third person, dated six days afterwards, which check was to be in full satisfaction of the note in case it was paid at maturity, it was held that this amounted to a suspension of the remedy against the maker, and discharged the endorser. The check was not the check of the debtor alone: and Judge Kennedy, in delivering the opinion, relied upon that as a distinguishing fact. He remarked, that "had the drawer given his own check merely for the payment of the note at the expiration of six days, there might have been some colour for saying that he (the creditor) had not thereby precluded himself from bringing suit on it during that period; because it might then have been argued with great plausibility, if not correctly,

that he had obtained by it no additional security, and consequently no adequate consideration to make a promise of indulgence binding; that by the check he acquired nothing except the personal responsibility of the drawer, which he had before by virtue of the note; and therefore had he even made an express promise of indulgence for the six days, it might have been alleged that he would not have been bound by it for want of a sufficient consideration." The case of Mercer v. Lancaster, 5 Barr 160, was one in which the surety of the debtor took a note of a third person, endorsed by the debtor as counter security. There was no taking by the creditor of a new security. Mr. Justice Rogers, arguendo, remarked, that by taking the new note endorsed by his principal, the surety had debarred himself from calling upon the creditor to collect the money due upon the note of the principal and surety. It was not a question between the creditor and the debtor, and the new note was an additional security, for it gave to the surety another promissor whom he had not before. The dictum of the learned judge, therefore, was not applicable to a case where a fresh security of the debtor alone payable at a future day, is taken as a collateral. But in Myers v. Wells, 5 Hill 463, the case was this: A note had been endorsed for the accommodation of the maker, who transferred it to a merchant as collateral security for the payment of the price of goods thereafter to be furnished. Goods were accordingly furnished, and on a settlement of accounts some months after the note fell due, the maker was found indebted in a large amount, for which the merchant took his notes, payable at a future day. It was held by the Supreme Court of New York, that this suspended the merchant's right to sue the maker of the first note until the last-mentioned notes fell due. The court attributed some importance to the fact that an account had been stated which was in itself a sufficient consideration for an agreement to suspend suit against the maker. But the ruling was distinct that the taking of the new notes implied an agreement to give time on the old. Several authorities were cited in support of the decision, and among them Okie v. Spencer, 2 Whart. 259. I do not find, however, that the authorities cited sustain the ruling in the broad terms in which it was made. The case of Kendrick v. Lomax, 2 Cromp. & Jer. 405, is most in point. There it was held that a creditor who had taken a new negotiable security, not in satisfaction of, but as collateral to a former bill, could not sue on the first bill without producing and giving up the new bill. So far, however, as I have been able to examine the modern English cases, they seem to recognise the doctrine that the taking a negotiable security for and on account of a debt, operates primâ facie to suspend the creditor's right to sue for the debt until the new security becomes due. Such was

[Shaw & Leigh *v.* The First Associated Reformed Presbyterian Church.]

asserted to be the law in Walton *v.* Mascall, 13 M. & W. 452, by Baron Parke; and such also was the ruling in Baker *v.* Walker, 14 M. & W. 465, and Price *v.* Price, 16 M. & W. 232. The doctrine of Fellows *v.* Prentiss, 3 Denio 518, is the same. See also Putnam *v.* Lewis, 8 Johns. 389.

But the later Pennsylvania decisions take different ground, and follow the ruling in Bing *v.* Clarkson, 2 Barn. & Cress. 14, in which it was decided that the acceptance of a new bill from the acceptor of a former bill after it had become payable, for the payment of the same debt at a future day, could only be considered taking a collateral security, and therefore did not amount to or imply giving time to the acceptor, and consequently did not release the other parties to the bill first given. In Weakly *v.* Bell & Sterling, 9 Watts 273, Judge Kennedy, who also delivered the opinion in Okie *v.* Spencer, goes over the cases, and comes to the conclusion that "taking a new note for the same debt mentioned in the old, without any agreement to give time to the drawer, or to deliver up the old note to him, or that the new shall be taken in satisfaction of the old note, has ever been considered a mere collateral security which does not affect or alter the original liabilities of the parties on the old note, in any respect whatever." And in Bank of Pennsylvania *v.* Potius, 10 Watts 150, the doctrine asserted in Weakly *v.* Bell & Sterling, was reaffirmed. Ripley *v.* Greenleaf, 2 Vt. 159; U. S. *v.* Hodge, 6 Howard 279; and Wade *v.* Stanton, 5 Id. 371; as well as Elwood *v.* Diefendorff, 5 Barbour 298, are substantially to the same effect. All of these cases I understand as holding that there is no implication that the creditor agrees to give time for the payment of the original debt, arising out of the fact that he takes a note payable at a future day on account of it. They maintain that the law raises no such agreement, and if there be one, it is to be proved as a fact, dependent for its existence on the understanding of the parties at the time when the security is given.

In the present case the receipt given by the plaintiffs to the contractor was for three notes, all payable before the expiration of six months from the time when the bricks were furnished, "amounting to $1846.50, in full for bricks delivered to church in Race street, east of Seventeenth, north side." As the jury have found that the notes were not received in satisfaction of the debt, they were of course collateral to the account, and therefore according to the doctrine of Weakly *v.* Bell & Sterling, the court could not say that the receipt amounted to an agreement to give time for the payment of the account. If this is so, it is unnecessary to inquire whether the church building is to be regarded as standing in the relation of a surety for the contractor, for it was not established that any time was given. This point does not

[Shaw & Leigh v. The First Associated Reformed Presbyterian Church.]

seem to have been decided in any of the reported cases, nor even presented for decision. It is true that in Kinsley v. Buchanan, 5 Watts 118, when a contractor had given a note to a material-man, payable "after date," it was held that the property was not discharged from the lien. The note was not payable on demand. It had at least one day before it fell due, and if taking a note for the debt due by the contractor, payable at a future day, discharges the lien upon the property of the owner, that was a fair case for so holding. The case is worth nothing, however, as authority on this point, for the precise question was not raised.

It is sufficient for our ruling now, that an agreement to give time for the payment of the price of the bricks was not found by the verdict, nor to be implied in law from the receipt given in evidence.

> The judgment is reversed, and judgment is entered upon the verdict for the plaintiffs.