Alexander Collins and Frank Z. Woods, trading as Collins & Woods, Appellants, *v.* Clarence M. Busch.

*Payment—Acceptance of note or check—Receipt—Question for jury.*

The acceptance of a note or check of a third person to the creditor's order for a pre-existing indebtedness does not operate as payment unless so intended by the parties, and the question of the intention of the parties is one for the jury.

The giving of a receipt is not conclusive that a note or other obligation of a third person exchanged for the receipt was accepted as payment.

*Payment—Release of liens—Evidence—Question for jury.*

A material man accepted the note of a third person from a contractor, not intending that the note should be considered as payment on account of his debt. Subsequently, in order to secure payment of certain cash due him, he executed a paper by which he remised, released and forever quitclaimed to the contractor " all and all manner of liens, claims and demands whatsoever which we, or any or either of us now have " against the contractor " or his houses and premises for work done or for materials furnished for erecting and constructing" the same. The parties always spoke of this paper as a release of liens, and the material man testified that he did not consider it a settlement, but that he had been compelled to sign it to secure the money then due him. *Held,* that the question was for the jury as to whether it was mutually intended by the parties that the release should operate as a discharge of the personal liability of the defendant for the labor and materials furnished by the plaintiffs.

Argued Jan. 12, 1899. Appeal, No. 288, Jan. T., 1898, by plaintiffs, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1891, No. 374, on verdict for defendant. Before Sterrett, C. J., Green, Williams, McCollum, Mitchell, Dean and Fell, JJ. Reversed.

Assumpsit for materials furnished and delivered. Before Willson, J.

At the trial it appeared that defendant was a contractor and builder. Plaintiffs were roofers, heatermen and tinsmiths who had agreed to furnish material for defendant's building operations. On October 2, 1891, defendant gave to plaintiffs a note of the Knauff Organ Co., and received from them the following receipt: " Received of Mr. C. D. Busch $980 on account of , various contracts at Forty-second and Mantua avenue. (Signed) Collins & Woods." The note was never paid.

On November 18, 1891, plaintiffs' work being finished, calculation was made between them and defendant as to the balance due them, counting in the same the sum for which receipt was given on October 2, represented by this note, and the balance was found to be $333.

This balance Busch declined to pay until plaintiffs signed the usual printed form of release of mechanics' liens.

Nothing special appears to have been said by either side about the note.

Collins & Woods executed under seal a release, which read as follows:

"Whereas, we, the subscribers, have erected and furnished materials for erecting fifty-nine houses and stores on the lot or piece of ground situate on northwest side of Mantua avenue from Forty-second to Forty-fourth street, belonging to Clarence M. Busch, of this city, and have agreed to release all liens which we, or any or either of us have, or might have, on the said fifty-nine houses and stores by reason of materials furnished or work performed for erecting the same, now these presents witness, that we, the subscribers, for and in consideration of the premises and of the sum of one dollar, to each of us at or before the sealing and delivery hereof by the said Clarence M. Busch well and truly paid, the receipt whereof we do hereby acknowledge, have remised, released, and forever quit claimed, and by these presents do remise, release, and forever quit claim unto the said Clarence M. Busch, and to his heirs and assigns, all and all manner of liens, claims, and demands whatsoever, which we, or any or either of us, now have, or might or could have, on or against the said Clarence M. Busch or his houses and premises, for work done or for materials furnished for erecting and constructing the said fifty-nine houses and stores, or otherwise howsoever. So that he, the said Clarence M. Busch, heirs and assigns, shall and may have, hold, and enjoy the said fifty-nine houses and stores and premises, freed and discharged from all liens, claims, and demands whatsoever, which we, or any or either of us, now have, or might or could have, on or against the same, if these presents had not been made.

"In witness whereof, we have hereunto set our hands and seals, the day of the date written opposite our respective signatures."

Before the maturity of the $1,000 note, and after this release was signed, the Knauff Organ Company failed, and it was discovered that the note could not be collected from it or from any of the indorsers. The plaintiffs were compelled to take up such note and make it good to the party to whom they gave it, and upon demanding payment from Busch, he refused it.

Other facts appear by the opinion of the Supreme Court.

The court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiffs appealed.

*Error assigned* was in giving binding instructions for defendant.

*Joseph De F. Junkin,* for appellants.—Plaintiffs are not estopped by having signed the release from compelling the defendant, who received the full benefit of their material and hard work, to pay them what he justly owes them: Shepherd v. Busch, 154 Pa. 149; Kemmerer's App., 102 Pa. 558; Holmes v. Briggs, 118 Pa. 283; Seltzer v. Coleman, 32 Pa. 493; Kilpatrick v. B. & L. Assn., 119 Pa. 36; Dougherty v. Bash, 167 Pa. 429; Jones v. Shawhan, 4 W. & S. 257; Bell v. Bell, 12 Pa. 235; Walker v. Tupper, 152 Pa. 1; Greenawalt v. Kohne, 85 Pa. 369; McIntyre v. Kennedy, 29 Pa. 448; Benson v. Mole, 9 Phila. 66; Brown v. Williams, 120 Pa. 24.

*George L. Crawford,* of *Crawford, Loughlin & Dallas,* for appellee.—Although the general presumption from the mere taking of the note is that it was taken only as conditional payment, leaving the defendant liable for its amount if not paid at its maturity, what passed in the interview between Collins & Woods and the defendant, about the defendant's refusing to indorse the note and the plaintiffs' subsequent use of it, shows that they understood they had received it on the terms that the defendant was not to be liable to the plaintiffs for the amount of it if not paid at maturity.

The release given in the final settlement is a bar to the plaintiffs' recovery: Cummins v. Hurlbutt, 92 Pa. 166; Pa. R. R. Co. v. Shay, 82 Pa. 198; Alexander's Est., 156 Pa. 373; Roth's Est., 150 Pa. 261; Martin v. Berens, 67 Pa. 459; Thorne v. Warfilein, 100 Pa. 519; Assn. v. Hetzel, 103 Pa. 507; Ry.

Co. v. Swank, 105 Pa. 555; Phillips v. Meily, 106 Pa. 536; Thomas v. Loose, 114 Pa. 35; Jackson v. Payne, 114 Pa. 67; North v. Williams, 120 Pa. 109; Sylvius v. Kosek, 117 Pa. 67; 2 Parsons, Contr. 833; Curley v. Harris, 11 Allen, 112; Squires v. Amherst, 145 Mass. 192; Jenkins v. Clyde Co., 48 W. N. Rep. 970.

Even if the plaintiffs did not read the release when they signed it, they are bound by it, having the opportunity and being obliged to do so: Weller's App., 103 Pa. 594.

OPINION BY MR. JUSTICE GREEN, May 23, 1899:

It is perfectly manifest that so far as the giving of the receipt of October 2, 1891, and the acceptance by the plaintiffs of the $1,000 note of the Knauff Organ Company, are concerned, the burden of proof that it was accepted as payment rested upon the defendant. It is equally certain that it was not proved by any testimony on the trial that the note was accepted as payment. It is true, a receipt for $980 on account of various contracts was signed by the plaintiffs, and that the note was at that time delivered to and accepted by the plaintiffs. But it has been many times decided that the giving of such a receipt is not at all conclusive that a note or other obligation of a third person exchanged for the receipt was accepted as payment. We have always held that such a receipt was open to explanation. In Holmes v. Briggs, 118 Pa. 283, we said, "Nothing is better settled than that, in the absence of any special agreement to the contrary, the mere acceptance by the creditor from his debtor of the note or check of a third person to the creditor's order for a pre-existing indebtedness is not absolute, but merely conditional payment, defeasible on the dishonor or nonpayment of the note or check, and in that event the debtor remains liable for his original debt." In Kemmerer's Appeal, 102 Pa. 558, we said, "It is well settled law that the acceptance of a new security for an existing debt does not operate as payment unless so intended by the parties, and this is a question for the jury." In Shepherd v. Busch, 154 Pa. 149, we said: "It by no means follows from the mere fact of a receipt having been given for the gross sum represented by the cash and papers that the paper is accepted as absolute payment. That depends upon actual agreement. . . . When the receipt is intended to be proof of an

agreement to receive the paper of third persons as absolute payment of that much in money it ought to say so. This receipt says nothing upon that subject, and therefore is very feeble proof in support of such a contention."

In the present case there was not only no affirmative testimony showing or tending to show that the note was taken as payment, but there was very persuasive testimony showing that it was not so taken. As soon as Collins discovered that the note was not indorsed by Busch he took it back to Weekey from whom he received it, and told him that Busch's name was not on it and he wanted to return the note and demanded back his receipt. He testified, "I wanted to return the note. He says, 'Oh, no, you can't do that.' I says, 'Well, I don't want this note; Mr. Busch hasn't indorsed it, which you had told me previously that Mr. Busch wouldn't give me a note without indorsing it.'" Mr. Weekey who delivered to him the note did not testify that Collins agreed to take it as payment, and admitted that he brought the note back just after he left the room and complained that Busch had not indorsed it. So far, therefore, as the direct transaction is concerned it is apparent that the note was not taken as payment at the time it was handed to Collins. Collins also testified that he saw Busch the next day and demanded his signature on the note, and that Busch refused to indorse it and gave him a reason why he would not. He also testified, thus, "He said the note was gilt edge. I says, 'What am I going to do if it isn't paid?' Mr. Busch says, 'You come and see me, that note is all right—gilt edged.'" Busch admitted that Collins brought the note back to him and wanted his indorsement which he refused to give. All of this testimony is utterly inconsistent with the idea that Collins had accepted the note as payment on account of his bill. If there were nothing else in the case and the jury believed the plaintiff Collins, they would have been bound to find a verdict for the plaintiffs. But at a later period the plaintiffs signed a release of all liens on the buildings, and there was included in the instrument an apparent release to the defendant from all demands, and the question which arises is whether this release is a bar to any recovery in this action against the defendant. It is clear that so far as it is a release of liens on the buildings it would not of itself have any such effect. The plaintiffs might be perfectly

willing to release their claim against the buildings in order that the owner might not be hampered in his efforts to sell the houses separately, or in order that the principal contractor might be able to comply with an undertaking on his part to deliver the property free of mechanics' liens. But it by no means follows from such a release that the plaintiffs intended by the release to discharge the defendant from all personal obligation to them for the materials and labor they had furnished to him. Hence, the only question that remains to be considered is whether they did intend to release the defendant from all personal obligation to pay them for their materials and labor. Recurring to the words of the release in the first instance, we find they are as follows on this subject: "Have remised, released, and forever quit claimed, and by these presents do remise, release and forever quit claim unto the said Clarence M. Busch and to his heirs and assigns all and all manner of liens, claims and demands whatsoever, which we, or any or either of us now have or might or could have on or against the said Clarence M. Busch or his houses and premises, for work done or for materials furnished for erecting and constructing the said fifty-nine houses or otherwise howsoever." The plain and obvious import of this language is that it is a release of liens, claims and demands arising from the furnishing of materials and labor by the plaintiffs for the erection and construction of certain buildings. But this means, necessarily, only the discharge of the buildings from the lien authorized by the mechanic's lien law. The language, however, is broad enough to include a discharge of the person of the defendant from all claims and demands growing out of the furnishing of materials and labor, though that idea is obscurely expressed. If there were nothing else in the case but the bare release, it would operate as a discharge of the personal obligation of the defendant, as well as a release of liens on the buildings. But there is much other matter in the testimony which occasions very considerable doubt as to what was the real intention of the parties on this subject. As we have before said it is very evident that there was no proof of any intent on the part of the plaintiff to accept the note of the organ company as payment. On the contrary the affirmative testimony showed that it was not so accepted. The testimony as to what took place when the release was given is equally barren of any ex-

press proof that the note was taken as payment.   The release was given before the maturity of the note, and before it could be known whether it would be paid or not.   Nothing specifically was said about the note when the release was executed. The plaintiffs wanted the money that was due them, and the defendant refused to pay it unless the release was signed.   The plaintiff Collins testified that he was compelled to sign the release in order to get the balance of money that was due him, and for that reason he signed it.   He said: " We had to settle. We couldn't get the money.   We had to sign the release of liens before he would give us that check."   He further said, " The $1,000, Mr. Busch said I couldn't claim—that it was not due."   He was asked: " Q. You figured up that for all your work under that contract, charging you with $980, you settled that, the whole balance was $333 for heaters, ranges, tinwork and everything?   A. I didn't consider it a settlement.   Mr. Weekey wouldn't give me that check unless I signed the release of liens.   Q. Was not the amount of that check a settlement of the entire balance?   A. Yes, sir, outside of the $1,000."

If the jury should believe this testimony, one of the parties in the transaction did not regard the settlement as including the $1,000 note.   He also did regard the release as a release of liens only.   In this he was corroborated apparently by the testimony of the defendant and of his agent Weekey.   The latter was asked: " Q. What did you say to him (Collins) about signing that release and receiving the check?   A. He asked me what that was I wanted him to sign.   I told him 'It is a release of liens.'   He and his partner, Mr. Wood, were there, and the release of liens was handed to them, that paper there, and they looked it over and we figured up just how we stood in the matter and I paid them the check of $333, and they signed the release of liens in these two places."

The defendant, in speaking of the release, said, " I wrote that (the words 'heaters, ranges and roofing') the morning I gave Mr. Weekey the check.   I filled the release of liens out and gave him the blank check."

In view of the peculiar character of the contention between these parties it might well be argued to the jury from the whole of the foregoing testimony that all the parties, including the agent of the defendant who obtained the signature of the plain-

tiffs to the release, regarded it as a release of liens only, and that it was a case of mutual mistake if it was to be treated otherwise. Considering also the fact that there is an entire absence of testimony showing that there was any actual agreement by the plaintiffs to accept the $1,000 note as payment, and that the argument that there was such an intent is founded only upon an inference derived from the generality of the words of the release, we think that a fair question arises whether it was agreed by the plaintiffs to accept the note as payment, or whether it was mutually intended by the parties that the release should operate as a discharge of the personal liability of the defendant for the labor and materials furnished by the plaintiffs. The determination of this matter would necessarily be for the jury, and hence it should be submitted to them. The assignment of error is sustained.

Judgment reversed and new venire awarded.