UNITED STATES, to Use of GRISCOM–SPENCER CO., v. UNITED STATES FIDELITY & GUARANTY CO.

(Circuit Court, E. D. Pennsylvania. August 16, 1909.)

No. 528.

UNITED STATES (§ 67*)—CONTRACTORS' BONDS—EXTENT OF LIABILITY.

A surety on the bond of a contractor with the United States for a public work, conditioned for the payment by such contractor of all claims for labor and materials, as required by Act Aug. 13, 1894, c. 280, 28 Stat. 278 (U. S. Comp. St. 1901, p. 2523), is not released from liability to a subcontractor by the taking by the latter of a note from the contractor for his claim due in three months, but which did not mature until final settlement had been made between the contractor and the United States and a few days after receivers in insolvency had been appointed for the contractor.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 50; Dec. Dig. § 67.*]

At Law. Sur rule for judgment for want of sufficient affidavit of defense.

See, also, 171 Fed. 247.

Samuel Crowther, Jr., and George Quintard Horwitz, for plaintiff.
R. Stuart Smith and Morgan, Lewis & Bockius, for defendant.

HOLLAND, District Judge. This suit for $2,120, with interest, is instituted in the name of the United States, to the use of a subcontractor, under the Act of Congress approved August 13, 1894 (28 Stat. 278, c. 280 [U. S. Comp. St. 1901, p. 2523]), to recover for material furnished in the construction of four mine planters for the United States army. It is alleged in the statement of claim that the Neafie & Levy Ship & Engine Building Company, of Philadelphia, undertook the building of four vessels for the United States army, by a contract dated June 24, 1903, for the sum of $122,000 each. The shipbuilding company, in compliance with the requirements of the above-mentioned act of Congress, filed a bond in the sum of $100,000, with the United States Fidelity & Guaranty Company, the defendant,

as surety, for the completion of the contract, and, inter alia, to "promptly make full payments to all persons supplying it labor or materials in the prosecution of the work provided for in said contract." The vessels were completed, delivered, accepted, and final payment made on November 3, 1904. The use plaintiff, at the request of the contractor, furnished certain feed water heaters on March 4, 1904, which were used in completing the work. These claims were not paid, and on December 9, 1904, the contractor passed into the hands of a receiver appointed by the common pleas court of Philadelphia county. Thereafter the use plaintiff filed an affidavit with the War Department and received a certified copy of the contract and bond, under date of May 29, 1908, and in accordance with the above-mentioned act of Congress brought suit against the surety on the bond.

To this statement of claim the defenses made in the affidavit filed are: (1) That a vessel is not a public building or public work, within the meaning of the acts of 1894 and 1905, and that the cause of action did not accrue until the use plaintiff had obtained a "certified copy of the contract and bond," which was on the 29th day of May, 1908, and at that time the statute of limitation in Act Feb. 24, 1905, c. 778, 33 Stat. 811 (U. S. Comp. St. Supp. 1907, p. 709), amending the act of 1894, was applicable to this case, and under the provisions of this latter act the right of the use plaintiff to recover is barred by the limitation of one year therein contained. It will not be necessary to consider these questions, because they have been considered by Judge Lanning in the case of United States of America, to the Use of Williamson Brothers, v. United States Fidelity & Guaranty Company (April Sessions, 1909, No. 596) 171 Fed. 247, wherein he disposed of them against the contention of the defendant.

The second defense set up is that on September 15, 1904, the use plaintiff accepted the promissory note of the contractor, payable December 15, 1904, for $2,151.80, which included the contract price of the heaters, plus $41.80 interest on the note to date of maturity. The note was immediately discounted by the use plaintiff at a Philadelphia bank, and it is claimed that by accepting and discounting a note for the full contract price of the heaters the use plaintiff extended the time of payment for the material furnished beyond the termination of the contract, and deprived the surety of the opportunity of compelling the appropriation of the sums received from the government to the payment of the claims, and therefore released the surety.

On September 15, 1904, when the use plaintiff accepted the promissory note of the contractor, the government had not then made final payment to the latter for the completion of the work. On that date the use plaintiff accepted these promissory notes, payable in three months, and they fell due on December 15, 1904, which was more than a month after November 3d of the same year, the date of final payment by the government. The defendant claims that the effect of the acceptance of this note by the use plaintiff in law extended the time of payment beyond the termination of the contract, and thereby released the surety. The plaintiff, however, insists that the mere acceptance of the note was not payment of the contract price, nor did it extend the time of payment in law. This contention is no doubt sustained by

the Pennsylvania authorities upon which the plaintiff relies. Unless there is a special agreement that notes accepted by a creditor from his debtor shall be received as payment, the debtor remains liable for his original debt (Collins v. Busch, 191 Pa. 549, 43 Atl. 378) ; and, further, unless it is especially agreed that the acceptance of notes by the creditor shall extend the time of payment, suit may be instituted by the creditor against the debtor on the original debt before the notes fall due (Shaw & Leigh v. First Associated Presbyterian Church, 39 Pa. 226; Buck v. Wilson, 113 Pa. 423, 6 Atl. 97; United States, to the Use, etc., v. Hegeman, 204 Pa. 438, 54 Atl. 344; Philadelphia v. Howell, 19 Pa. Super. Ct. 76; Hummelstown Brownstone Co. v. Knerr, 25 Pa. Super. Ct. 465). It would seem, however, that the United States courts hold that by the general commercial law a promissory note, accepted by the creditor for his claim, while it does not discharge the debt for which it is given, in the absence of a special agreement to that effect, still operates to extend until the maturity of the note the time for the payment of the debt. The creditor may return the note when dishonored and proceed upon the original debt; but in the meantime the action upon the original debt is suspended. Harris v. Johnston, 3 Cranch, 311, 2 L. Ed. 450; The Kimball, 3 Wall. 37, 18 L. Ed. 50; Looney v. District of Columbia, 113 U. S. 261, 5 Sup. Ct. 463, 28 L. Ed. 974; Segrist v. Crabtree, 131 U. S. 287, 9 Sup. Ct. 687, 33 L. Ed. 125; Guarantee Co. v. Press Brick Co., 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242.

It is held by the defendant that in passing upon questions of general commercial law the federal courts are not bound by the decisions of the court of the state where the contract in question was made and is sought to be enforced. While this may be true, we do not think that it is important in the determination of the defendant's second matter of defense, for the reason that the Supreme Court of the United States considered the same defense in the case of Guarantee Co. v. Press Brick Company, supra, and, we think, decided it against the defendant's contention. In that case there was a suit instituted by the subcontractor against the surety under the same act of Congress. Notes had been taken by the use plaintiff for material furnished, one of which was not payable until after final settlement by the government, although there was no insolvency of the contractor intervening between final settlement and date of payment of the note, as there is in this case; but the Supreme Court in that case uses this language:

"In this covenant the surety guarantees nothing to the principal obligee, the government, though the latter permits an action upon the bond for the benefit of the subcontractors. The covenant is made solely for their benefit. The guarantor is ignorant of the parties with whom his principal may contract, the amount, the nature, and the value of the materials required, as well as the time when payment for them will become due. These particulars it would probably be impossible even for the principal to furnish, and it is to be assumed that the surety contracts with knowledge of this fact. Not knowing when or by whom these materials will be supplied, or when the bills for them will mature, it can make no difference to him whether they were originally purchased on a credit of 60 days, or whether, after the materials are furnished, the time for payment is extended 60 days, and a note given for the amount maturing at that time. If a person deliberately contracts for an uncertain liability, he ought not to complain when that uncertainty becomes certain."

It was further held that the requirement that the obligor should "promptly" make payment to his materialmen "is satisfied by such payment as the subcontractor shall accept as having been promptly made." Were it not for the fact that the contractor became insolvent a short while before the maturity of the note accepted by the use plaintiff in the case at bar, Guarantee Co. v. Press Brick Co. would be decisive of this case. In the latter case the contingency of insolvency had not supervened, and the court said:

"That the facts * * * did not call for an expression of opinion as to whether, if an unusual credit were given, and in the meantime the principal obligor had become insolvent, or the surety were otherwise damnified by the delay, it might not be exonerated."

There is no averment in this case to lead to the conclusion that an unusual credit was extended, resulting in injury to the defendant. The transaction was conducted in the usual way, and only a usual credit extended. It is not alleged that there was anything unusual either in the purchase of the material or extension of credit, and the liability resulting was a liability for which the defendant contracted when it signed the bond. The fact that the contractor became insolvent before the note given by him to the use plaintiff became due is no defense, because it cannot be said as a matter of law that three months was an unusual credit to extend to the contractor by the use plaintiff for the materials furnished. It is no unusual thing for subcontractors and contractors to take one, two, three, and even four months notes for materials furnished in all lines of construction, and, so long as it is not averred the usual course was violated in the extension of credit, it is no defense that the usual credit given in this case happened to extend the time to a point six days beyond the date when the receivers were appointed for the contractor, which was December 9, 1904. The date of final settlement was not definitely fixed in the contract, and the use plaintiff could not know when it would take place. While it is true he had furnished the material for which the notes were taken on March 4, 1904, and accepted three months notes on September 15, 1904, there was no unusual extension of time; and, as stated by the court in Guarantee Co. v. Press Brick Co., supra, it could make no difference to the surety that "after the materials are furnished the time for payment is extended 60 days [in this case 90 days] and a note given for the amount maturing at that time."

We are of opinion, therefore, that the affidavit of defense is insufficient, and that judgment should be entered for debt, interest, and costs. It is so ordered.